UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNETTE K. BURMEISTER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>　　　　　Defendants. | Case No. 14-cv-00133-VC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 27, 31 |

　　　　Jeannette Burmeister has sued the United States Department of Health and Human Services and the National Institutes of Health (hereinafter "HHS" or "the government") under the Freedom of Information Act ("FOIA") for failure to respond to her request for documents relating to the decision by HHS to contract with the Institute of Medicine to conduct a study on the condition of myalgic encephalomyelitis/chronic fatigue syndrome (hereinafter "the condition"). The declarations submitted by the government – in particular the supplemental declaration of Denise Wallace – demonstrate that the government has failed to adequately respond to Burmeister's request. Therefore, Burmeister is entitled to summary judgment.

　　　　Burmeister's request sought "any contracts" that HHS entered into with the Institute of Medicine about the condition after February 2013. It also sought "any and all records" that "relate in any way" to "how it was determined that any such contract(s) would be entered into." And Burmeister's request sought "any background records relating to any such contract(s), including the determination that there would be no competitive bids." In a subsequent request, Burmeister, after discovering that the arrangement between HHS and the Institute of Medicine involved a "task order" instead of a contract, requested that task order as well as the relevant "umbrella contract"

1   and "all related documentation." She also specifically requested the "Justification for Other than
2   Full and Open Competition," if any.
3        From these requests it is clear that Burmeister sought all records relating to the decision by
4   HHS to commission a study by the Institute of Medicine about the condition, including
5   "background records" and all "documentation" that was "related" to the task order. Yet the
6   Supplemental Wallace Declaration shows that HHS treated Burmeister's request far more
7   narrowly. Wallace insists in this declaration that Burmeister did not originally seek "documents
8   regarding how the contracting mechanism was chosen, how it was decided which services would
9   be requested or how the entity was chosen to perform such services." Supp. Wallace Dec. at ¶ 4;
10  *see also id*. at ¶ 9. This is obviously an unreasonably narrow interpretation of Burmeister's request
11  given the language she used. Yet Wallace indicates she performed her search based on this
12  unreasonably narrow interpretation.[1] Indeed, Wallace explains in her supplemental declaration
13  that a broader search (the one the government should have conducted given the actual language of
14  Burmeister's request) "is a completely different type of search and presumably would have
15  resulted in a much larger production." *Id*. at ¶ 5.
16       And Wallace is correct about that. For example, without listing every document that could
17  be responsive to Burmeister's actual request, it is obvious that all records relating to the original
18  effort by HHS to enter into a sole-source contract with the Institute of Medicine, and documents
19  relating to the subsequent decision to change course and proceed with a task order in response to
20  expressions of concern by members of the public about the manner in which HHS was proceeding,
21  would be responsive. Such records exist, but the government did not provide them to Burmeister.
22       Because Wallace's supplemental declaration demonstrates that the government adopted an
23  unreasonably narrow interpretation of Burmeister's request, because Wallace concedes she would
24  have performed a much broader search had she interpreted the request correctly, and because that
25  search would have uncovered additional records responsive to the request, the government has

---

[1] It also appears from Wallace's supplemental declaration that she may have considered only Burmeister's initial request and not the two subsequent requests. *See id.* at ¶¶ 4, 5, 9.

"improperly withheld agency records" in violation of FOIA. *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 689 (9th Cir. 2011).

To avoid this conclusion, the government argues that Burmeister's lawsuit should be dismissed as moot. Specifically, the government contends that even if Burmeister had the right to file her lawsuit because HHS failed to respond to her request within the time period required by FOIA, its subsequent production to Burmeister moots the lawsuit, even if the production was deficient. At the hearing on this motion, counsel for the government insisted that the case law compels this result – he argued that even if the production was deficient, the case law required that the lawsuit be dismissed as moot and that Burmeister be left to submit a response to the government's production explaining how she believed it was deficient, so that the government would have a chance to remedy the deficiencies. However, the case law says exactly the opposite of what counsel for the government represented at the hearing. *See, e.g., Yonemoto*, 686 F.3d at 689 ("To moot a FOIA claim, however, the agency's production must give the plaintiff everything to which he is entitled. Otherwise, there remains some 'effective relief' that can be provided the plaintiff, and the case is not moot.").[2]

For her part, Burmeister argues that before the Court grants summary judgment in her favor, it should permit her to conduct discovery, including taking depositions of high-level government officials, to allow her to confirm that all responsive documents can be identified. She bases this request in part on the fact that the declarations submitted by the government, in its

---

[2] The government also contends Burmeister's lawsuit should be dismissed for failure to exhaust her administrative remedies with respect to her claim that the agency's search was inadequate. Specifically, the government argues that it responded to Burmeister's request on January 7, two days before Burmeister sued, and that Burmeister should have objected to HHS about the adequacy of the response before filing the lawsuit. But the government's response was not postmarked until January 8, and Burmeister credibly asserts she did not receive it until several days after she filed her complaint. Nor, in any event, was the government's response a final or complete one – in other words, it was not a real response. The real response (which was, as discussed above, inadequate) came on February 3. Because the government failed to timely respond to Burmeister's records request, and because Burmeister did not receive a final decision from the government until after she filed this lawsuit, her case is properly before the Court. *See Pollack v. Dep't of Justice*, 49 F.3d 115, 118-19 (4th Cir. 1995) ("Under FOIA's statutory scheme, when an agency fails to comply in a timely fashion to a proper FOIA request, it may not insist on the exhaustion of administrative remedies, unless the agency responds to the request before suit is filed." (citations omitted)); 5 U.S.C. § 522(a)(6)(C)(i).

3

attempt to show that it conducted a thorough search in response to Burmeister's records request, are deficient. She is correct that the declarations are deficient in their failure to describe the search with sufficient particularity, but that is beside the point given the facts of this case. The requirement that the government submit declarations describing its document searches with particularity is designed to provide some degree of assurance, in a situation where certainty is impossible, that the government has done the best it reasonably can to find responsive documents. But in this case, we already know the government has not done a reasonable job – the government effectively admits that in the Supplemental Wallace Declaration. Therefore, Burmeister is entitled to summary judgment, and there is no need to conduct discovery about, or otherwise explore, whether the government's search was adequate. She has already established a FOIA violation, and the government must go back to the drawing board and conduct a proper search, this time under court order.

Accordingly, Burmeister's motion for summary judgment is granted, and the government's cross-motion for summary judgment is denied. The government is ordered to produce, within 60 days, all documents responsive to Burmeister's request that are not covered by any exemption to FOIA's disclosure requirements. Lest there be any confusion, Burmeister's request seeks any records relating to the decision by HHS to engage the Institute of Medicine in a study about myalgic encephalomyelitis/chronic fatigue syndrome. The government may not artificially narrow this request to exclude "background" records, such as records relating to the decisionmaking process about whether and how to engage the Institute of Medicine for this endeavor. Burmeister may file a motion for attorneys' fees and costs within 14 days of the date of this order, and the government has 7 days to respond.

**IT IS SO ORDERED.**

Dated: September 2, 2014

_____
VINCE CHHABRIA
United States District Judge